**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**CHANNER WOOLCOCK**,

      *Plaintiff*,

    v.

**THE MICHAELS ORGANIZATION LLC**,

      *Defendant*.

Case No. 23-cv-01375 (TSC)

---

**MEMORANDUM OPINION**

Plaintiff Channer Woolcock brings discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206(d), against her former employer, The Michaels Organization LLC. Defendant moves for summary judgment on all of Plaintiff's claims. Def.'s Mot. for Summ. J., ECF No. 51. For the reasons set forth below, the court will GRANT Defendant's motion for summary judgment.

**I.      BACKGROUND**

Defendant manages residential rental communities, including the Wardman Court apartment complex in Washington, D.C. Caiola Decl. ¶¶ 6, 14, ECF No. 51-2. In November 2014, Plaintiff, a Black woman, began working as an assistant to Andrew Brown, then the community manager at Wardman Court, for $18.00 an hour. Def.'s Statement of Undisputed Material Facts ("Def.'s SUMF") ¶¶ 1–8, ECF No. 51-1. She had previously worked for two property management

Page 1 of 16

companies, as a leasing consultant and tax-credit specialist, but never in a property management role. *Id.* ¶ 10.

In May 2015, Plaintiff moved into an apartment at Wardman Court. *Id.* ¶¶ 14–15. Around the same time, Plaintiff and Brown began a romantic relationship that continued until May 2021. *Id.* ¶ 16. In 2016, Plaintiff began assisting at Defendant's properties outside D.C.; starting in 2019, Defendant provided her a $250 work-related monthly rent abatement to offset the additional childcare costs she incurred as a result. *Id.* ¶ 15.

Over the course of her employment, Defendant raised Plaintiff's hourly pay numerous times: to $21.98 in 2016, $24.98 and then $25.73 in 2017, $26.25 in 2018, $27.03 in 2019, and $27.84 in 2020. *Id.* ¶¶ 17–19, 27–29. In 2016, Plaintiff was briefly appointed acting community manager at Wardman Court. Pl.'s Resp. to Def.'s SUMF ("Pl.'s Resp.") ¶ 46, ECF No. 56-3. In 2021, Defendant again appointed her acting community manager and raised her pay to $32.96 an hour, then to $33.96 in December 2021. Def.'s SUMF ¶¶ 34–37. She later became permanent community manager and received a further raise. *Id.* ¶ 39. Richard White, Defendant's regional manager, became her supervisor, though Plaintiff claims Brown unofficially continued to supervise her. *Id.* ¶ 35.

Plaintiff identifies three of Defendant's employees—Brown and two Black women, Tanetia Young and Natalie Hall—who were paid more than she was. *Id.* ¶ 42. Young, a community manager, and Hall, an assistant community manager, both worked at South Cap, which is larger than Wardman Court. *Id.* ¶ 43. Brown, who had 11 years of property management

experience before joining Defendant, was community manager at Wardman Court.  *Id.* ¶¶ 44–45; Caiola Decl. ¶ 9.

In early 2022, Plaintiff reported to Defendant that employees at another property were stealing from the company.  Def.'s SUMF ¶¶ 58–59.  On March 14, 2022, she sent management an email captioned "Pay Increase," stating that "[t]he previous community manager started out a little over $66k in 2014," and "[i]t is now 8 years later and I am not able to make even that."  Pl.'s Ex. 5, ECF No. 56-9.  The following month, Plaintiff met with Human Resources to request a raise, and on May 2, 2022, Defendant raised her salary to $36.81 an hour.  Def.'s SUMF ¶¶ 38, 40.

On May 13, 2022, Plaintiff resigned after accepting a higher-paying community manager position with another company.  *Id.* ¶¶ 66, 91.  She continued to live at Wardman Court, and on July 13, 2022, Defendant notified her that the $250 work-related rent abatement would end in September 2022.  *Id.* ¶¶ 67–71.  A week later, Defendant issued a "Notice to Cure or Quit," together with a 30-day notice of intent to file a claim, stating that Plaintiff had violated her tenancy obligations by "interfering with other residents' use and enjoyment of the property, the general livability of the apartment community, harassing management personnel, interfering with management of the premises, and refusing access to contractors and maintenance."  *Id.* ¶¶ 72, 74–75.  According to the notice, Plaintiff had attempted to recruit residents to lodge complaints against management; repeatedly created disturbances at the rental office by verbally abusing staff, including using profane language at a July 2022 staff meeting; harassed the spouse of a staff member; denied maintenance access to her unit despite 48 hours' notice; and misused keys to access the basement and garage without authorization.  *Id.* ¶ 75.  Plaintiff disputes the allegations,

contending they were part of a retaliatory campaign to drive her from Wardman Court.  Pl.'s Resp. ¶¶ 72, 75.

In a series of emails from August to October 2022, Plaintiff complained to Defendant about a rodent infestation in her unit and a continuously running vent in an adjacent vacant unit.  Pl.'s Exs. 8–14, ECF Nos. 56-12–18.  According to Plaintiff, she was denied extermination assistance afforded to other residents.  Pl.'s Resp. ¶¶ 61–62, 65.  Defendant responds that it treated the property for rats both during and after Plaintiff's employment.  Def.'s SUMF ¶ 65.

On December 28, 2022, Plaintiff filed a discrimination charge with the U.S. Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 77.  On April 10, 2023, she sued Defendant in D.C. Superior Court, Def.'s Ex. 18 at 6, ECF No. 51-20, and in May 2023, Defendant removed the case to this court, ECF No. 1.  In August 2023, Plaintiff filed her Second Amended Complaint, asserting discrimination and retaliation claims under Title VII and the Equal Pay Act, along with claims under "comparable" D.C. law.  *See* Second Am. Compl. ¶¶ 6–25, ECF No. 12. In September 2023, the court granted Defendant's motion to dismiss Plaintiff's state law claims. *See* Def.'s Mot. to Dismiss, ECF No. 13; Order, ECF No. 16.  In November 2025, Defendant moved for summary judgment on the remaining claims.  *See* ECF No. 51.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is "material" if it "might affect the outcome of the suit"; a dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The moving party bears the initial burden of demonstrating

the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party may defeat this showing by pointing to evidence in the record— more than "a scintilla"—creating a triable dispute. *Anderson*, 477 U.S. at 252. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III.    ANALYSIS

As an initial matter, although the Second Amended Complaint asserts Title VII and Equal Pay Act discrimination and retaliation claims, *see* Second Am. Compl. at 2, Plaintiff's opposition to Defendant's motion for summary judgment limits her claims to "unlawful retaliation against a former employee for having opposed discriminatory conduct, in violation of Title VII." Opp'n to Mot. for Summ. J. at 1, ECF No. 56; *see* Pl.'s Aff. ¶ 1, ECF No. 56-2. Plaintiff has not responded to Defendant's arguments or submitted any disputed facts regarding her Title VII discrimination and Equal Pay Act claims. But "[u]nder the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). "The Court may . . . treat the [movant]'s factual proffers as conceded, but it must address the [movant]'s legal arguments on their merits." *King v. Dep't of Just.*, 245 F. Supp. 3d 153, 158 (D.D.C. 2017); *see* Fed. R. Civ. P. 56(e)(2). That is, the court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law" and "'state on the record the reasons for granting or denying the motion.'" *Winston & Strawn*, 843 F.3d at 509 (quoting Fed. R. Civ. P. 56(a)). The

court therefore considers the merits of Plaintiff's Title VII discrimination and Equal Pay Act claims in addition to her retaliation claims under those statutes.[1]

### 1.  Title VII Discrimination

Under Title VII, it is unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Where, as here, a plaintiff offers indirect evidence of discrimination, the court applies the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): the plaintiff must first establish "a prima facie case of discrimination," after which the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the challenged action.  *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005).  If the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was but "a pretext for discrimination."  *Id*.

But when "an employee has suffered an adverse employment action and the employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case."  *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  The court instead asks whether the plaintiff has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-

---

[1] Defendant also argues that Plaintiff's disregard of her Title VII discrimination and Equal Pay Act claims constitutes a failure to prosecute, providing an independent basis to dismiss the action. Def.'s Reply at 2 n.1, ECF No. 58.  Dismissal for failure to prosecute is a disfavored sanction reserved for "egregious conduct by particularly dilatory plaintiffs, after 'less dire alternatives' have been tried without success." *Noble v. U.S. Postal Serv.*, 71 F. App'x 69, 69 (D.C. Cir. 2003) (quoting *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 187 (D.C. Cir. 1985)); *see Peterson v. Archstone Cmtys. LLC*, 637 F.3d 416, 418 (D.C. Cir. 2011).  It does not apply when, as here, a plaintiff continues to litigate her case and there is "no evidence . . . of bad faith, deliberate misconduct, or tactical delay." *Trakas*, 759 F.2d at 188.

discriminatory reason was not the actual reason and that the employer intentionally discriminated against the [plaintiff]" on a prohibited basis. *Id.* In resolving that question, the court weighs "all relevant evidence presented by the plaintiff and the defendant," *id.* at 495, including "the plaintiff's prima facie case" and "any evidence the plaintiff presents to attack the employer's proffered explanation for its action," *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (quoting *Waterhouse v. District of Columbia*, 298 F.3d 989, 993 (D.C. Cir. 2002)). Courts look to evidence that the employer treated "similarly situated employees outside the plaintiff's protected group" better, "deviat[ed] from established procedures or criteria," *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015), or "is making up or lying about the underlying facts that formed the predicate for the employment decision," *Brady*, 520 F.3d at 495.

Defendant has asserted a legitimate, nondiscriminatory reason for the pay discrepancy: its compensation decisions depend on the size of the property managed and the employee's previous property management experience. *See* Def.'s Mot. for Summ. J. at 9–11; Def.'s SUMF ¶ 49; Pl.'s Resp. ¶ 49. Those criteria supply a "clear and reasonably specific" explanation sufficient to discharge Defendant's burden, *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981): Young and Hall managed a larger property, and Brown had significantly more property management experience than Plaintiff, including as regional director at another company, *see* Def.'s SUMF ¶¶ 43–46.

Plaintiff cannot point to evidence from which a reasonable jury could conclude that this explanation was merely a cover for discrimination. She does not allege that she was discriminated against because of race or color or offer comparator evidence to that effect—Brown, Young, and Hall are all also Black. Def.'s SUMF ¶¶ 42, 48, 50; Pl.'s Resp. ¶¶ 42, 48, 50. The record does contain evidence supporting a sex discrimination claim: Plaintiff testified that Brown would "never

allow a female to make what he made," Def.'s SUMF ¶ 51, and that Charles Durnin, a Vice President, followed Brown's lead in setting pay, Def.'s Ex. 1 ("Woolcock Dep.") 125:1–5, ECF No. 51-3. But Plaintiff concedes that Defendant set compensation according to sex-neutral criteria, Def.'s SUMF ¶ 49, and the record undercuts any inference of sex discrimination: Brown earned more because he had significantly more relevant experience, *id.* ¶¶ 44–46, and two female employees also out-earned Plaintiff because they managed larger properties, *id.* ¶¶ 42–43. Brown's statement and alleged influence over Durnin do not create a genuine dispute that sex, rather than experience and property size, drove Plaintiff's compensation.

Because undisputed evidence forecloses a reasonable inference that Plaintiff's lesser pay was because of her sex, color, or race, summary judgment is warranted on her Title VII discrimination claims.

### 2. Equal Pay Act Claim

The Equal Pay Act prohibits paying an employee less than an employee "of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To establish a prima facie case, the plaintiff's job and that of her comparators must be "substantially equal," without "an appreciable variation in skill, effort or responsibility." *Thompson v. Sawyer*, 678 F.2d 257, 272 (D.C. Cir. 1982) (quoting *Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429, 449 (D.C. Cir. 1976)). The burden then "shifts to the employer to show that the differential is justified under one of . . . four exceptions," *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974): it is "pursuant to (i) a seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . based on any other factor

other than sex," *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 575 (D.C. Cir. 2010) (quoting 29 U.S.C. § 206(d)(1)).

Even assuming Plaintiff could satisfy the prima facie elements, Defendant has met its burden of showing that the pay disparity was justified by Brown's superior experience. As explained above, Plaintiff agrees that Defendant determined pay according to experience and property size, Def.'s SUMF ¶ 49; Pl.'s Resp. ¶ 49, and does not dispute that Brown was significantly more experienced, Def.'s SUMF ¶¶ 44–45; Pl.'s Resp. ¶¶ 44–45. Because Defendant has provided undisputed evidence that Plaintiff's compensation was based on a "factor other than sex," summary judgment is appropriate. 29 U.S.C. § 206(d)(1); *see Gaujacq*, 601 F.3d at 575–76 (affirming summary judgment where employees were paid based on level of experience).

### 3. Title VII and Equal Pay Act Retaliation

Title VII prohibits an employer from retaliating against an individual because they "opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, a claimant must show that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the two." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).

But when the employer offers a legitimate, non-retaliatory reason for the challenged action, "the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation" by showing that "'a discriminatory reason more likely motivated the employer'" or "'the employer's proffered explanation is unworthy of credence.'" *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (quoting *U.S. Postal Serv. Bd. of Governors v.*

*Aikens*, 460 U.S. 711, 716 (1983)).  Summary judgment is warranted when the plaintiff has "created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no [retaliation] had occurred."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

The Equal Pay Act itself does not prohibit retaliation against employees for filing claims. But the Fair Labor Standards Act ("FLSA") "generally prohibits retaliating against an employee 'because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to' its protections, including those of the Equal Pay Act."  *Perez v. D.C. Dep't of Emp. Servs.*, 305 F. Supp. 3d 51, 57 (D.D.C. 2018) (quoting 29 U.S.C. § 215(a)(3)). To establish a FLSA retaliation claim, a plaintiff must show that: "(1) he made an FLSA complaint or otherwise engaged in protected conduct; (2) the defendant was aware that he had engaged in protected activity; (3) the defendant took an action that was materially adverse to the complainant and sufficient to dissuade a reasonable employee from further protected activity; and that (4) there was a causal relationship between the two."  *Del Villar v. Flynn Architectural Finishes, Inc.*, 893 F. Supp. 2d 201, 213 (D.D.C. 2012).

"Courts essentially equate the elements of retaliation under the FLSA with those under Title VII," and "[r]etaliation claims under the FLSA are subject . . . to the burden-shifting framework of *McDonnell Douglas*."  *Guerrero v. Vilsack*, 134 F. Supp. 3d 411, 428 (D.D.C. 2015). The court therefore analyzes Plaintiff's Title VII and Equal Pay Act retaliation claims together, looking to Title VII case law, while "tak[ing] care to respect any differences in language and purpose between Title VII and the FLSA."  *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir.

2008) (noting "similar statutory language" and "purpose" of Title VII and FLSA retaliation provisions); *see Cooke v. Rosenker*, 601 F. Supp. 2d 64, 72–73 (D.D.C. 2009).

Plaintiff claims that Defendant retaliated against her for her March 2022 email seeking a pay increase by (1) ending her rent abatement, (2) serving a notice threatening her tenancy, and (3) refusing to address noise and rodent issues.[2]  *See* Opp'n to Mot. for Summ. J. at 2–8.  As explained below, Plaintiff's claims "get stuck at the starting block." *Dreiband v. Nielsen*, 319 F. Supp. 3d 314, 320 (D.D.C. 2018).

To begin, no reasonable jury could find that Plaintiff engaged in protected activity, which requires an employee to communicate to her employer "a belief that the employer has engaged in a form of employment discrimination." *Crawford v. Metro. Gov't of Nash. & Davidson Cnty.*, 555 U.S. 271, 276 (2009) (cleaned up); *see Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 13 (2011) (requiring, under FLSA, "fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation").  Plaintiff's email to her employer states that she is "an excellent employee," that "[t]he previous community manager started out a little over $66k in 2014," and that "8 years later" she is "not able to make even that."  Pl.'s Ex. 5. On its face, the email is a request for a raise, and while she compares her pay to her predecessor's, she does not mention sex or otherwise suggest that the disparity is attributable to a protected characteristic.  While Plaintiff argues that she "reasonably, and in good faith" believed she was opposing sex-based pay discrimination, Opp'n to Mot. for Summ. J. at 3, 11, her communication

---

[2] Although Plaintiff's Opposition identifies her March 2022 "Pay Increase" email as the protected activity at issue, *see* Opp'n to Mot. for Summ. J. at 2–3, her EEOC charge framed her protected activity as her reports of employee theft, *see* Def.'s SUMF ¶¶ 58–61; Pl.'s Resp. ¶¶ 58–61; Def.'s Ex. 11 ("EEOC Charge"), ECF No. 51-13.  The court agrees with Defendant that such reports were not protected activity: employee theft constitutes neither an employment practice nor unlawful discrimination on a protected basis.  *See McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012); 42 U.S.C. § 2000e-3(a).

"must in some way *allege* unlawful discrimination," *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (italics added). Complaining about a pay disparity "without mentioning discrimination or otherwise indicating that gender was an issue, does not constitute protected activity, even if the employee honestly believes she is the subject of sex discrimination." *Id.* For the same reasons, Plaintiff's email does not "fall within the scope of the [FLSA's] antiretaliation provision" because it is not "sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 563 U.S. at 14.

Even assuming Plaintiff engaged in protected activity, her retaliation claims still fail for independent reasons. As to the termination of her rent abatement, Plaintiff cannot show that she suffered a materially adverse action or that Defendant's reason was pretextual. "Unlike discriminatory actions, retaliatory actions need not be employment-related or even occur in the workplace, nor must they result in 'a materially adverse change in the terms or conditions of one's employment.'" *Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 116 (D.D.C. 2014) (citation omitted) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006)). Instead, a materially adverse action is one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Even so, "[a]ctionable retaliation claims are limited to those where an employer causes '*material* adversity,' not 'trivial harms.'" *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007) (quoting *Burlington*, 548 U.S. at 68).

It is undisputed that Plaintiff's rent abatement was tied to her employment; specifically, it was meant to offset additional childcare costs she incurred while "helping out at numerous properties outside of the state." Woolcock Dep. 56:11–16, 162:11–17; Def.'s SUMF ¶ 15. When

she received the letter terminating the abatement, she was no longer employed by Defendant, much less assisting at multiple properties.  Def.'s SUMF ¶ 70.  Withdrawal of a benefit necessitated by and expressly tied to work she no longer performed would not dissuade a reasonable worker from complaining of discrimination.  And in any event, Defendant's explanation—that the abatement lapsed because the qualifying work ended—is legitimate and non-retaliatory, and Plaintiff offers no evidence it was pretextual.  Nor could she: the conditions on which Defendant granted the benefit had lapsed, and nothing in the record suggests Plaintiff would have continued receiving it had she not sent the pay-increase email.  No reasonable jury could find that Defendant's termination of the rent abatement was retaliatory.

Whether the cure-or-quit notice and the handling of her noise and rodent-infestation complaints are materially adverse presents closer questions which the court need not resolve because these bases independently fail for lack of pretext and causation.  As to the cure-or-quit notice, Defendant has established legitimate, non-retaliatory reasons for its issuance: Plaintiff violated obligations of her tenancy when she "tried to convince [other tenants] to complain about management of the premises"; "repeatedly caused scenes at the rental office by . . . screaming, berating and cursing at management personnel"; "interrupted a staff meeting with loud and profane insults toward staff members"; and "repeatedly refused access to maintenance personnel and contractors."  Def.'s Ex. 16 at 2–3, ECF No. 51-18.

Plaintiff cannot produce evidence sufficient for a reasonable jury to find that these reasons were a pretext for retaliation.  While a plaintiff may establish a causal link "by showing that the employer had knowledge of the employee's protected activity[] and that the adverse personnel action took place shortly after that activity," *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985), the events must be "very close" in time, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74

Page 13 of 16

(2001) (cleaned up).  The more than four-month lapse between Plaintiff's pay-increase email and the notice does not support an inference of retaliatory motive.  *See Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (rejecting as "untenable" "an inference of retaliatory motive based upon the 'mere proximity' in time" between an employee filing a lawsuit and discipline for unexcused absence two and one-half months later).

And in any case, "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007).  Plaintiff also disputes the accuracy of the complaints, arguing they were "yet another element of the retaliatory scheme" and pointing to supportive letters she solicited from fellow tenants stating that she never harassed or solicited them.  Pl.'s Resp. ¶¶ 74–75; Pl.'s Ex. 16, ECF No. 56-20.  But this evidence neither displaces other residents' and staff members' complaints nor renders Defendant's reliance on such complaints unreasonable.  The relevant question is not "whether the underlying . . . incident occurred," but "whether the employer honestly and reasonably believed that the underlying . . . incident occurred." *Brady*, 520 F.3d at 496.  "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Id.* at 495.  Given Defendant's reliance on multiple third-party reports—from residents and staff alike—of unacceptable behavior, there is no triable dispute as to whether Defendant's belief that Plaintiff violated her tenancy obligations was reasonable.

As to Defendant's alleged failure to timely address the rodent infestation and noisy vent, Defendant disputes the factual basis of the claim.[3]  According to Defendant, it "had been treating

---

[3] Defendant frames this basis for retaliation as nothing more than Plaintiff's dissatisfaction with its choice of pest-control vendor.  *See* Def.'s Reply at 6.  But Defendant identifies no support for that characterization in the record, nor can the court discern any: Plaintiff testified that, after her

for rats for years, during and after [Plaintiff's] employment" and "[t]his treatment was afforded to Plaintiff." Def.'s SUMF ¶ 65. Defendant's emails state that Plaintiff failed to properly prepare her unit for treatment and that Defendant scheduled pest control and maintenance services in August, September, and October. Def.'s Exs. 12–13, ECF Nos. 51-14–15. Plaintiff nonetheless experienced ongoing rodent issues, and in October 2022, a technician notified her that her unit could not be treated. *Id.* As to the noisy vent, Defendant's emails state that a manager completed an inspection and determined the vent was not running, though Plaintiff's emails a few days later state the issue persisted. Pl.'s Exs. 9–10, ECF Nos. 56-13–14.

Ultimately, the court need not decide whether a reasonable jury could determine that Plaintiff suffered materially adverse habitability issues because Plaintiff has not provided sufficient evidence from which a reasonable jury could infer that "the but-for cause of the challenged . . . action" was the pay-increase email. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Plaintiff asserts that Defendant "did nothing to abate the problems in any meaningful way until after [she] sought protection" before the D.C. Office of Human Rights and the EEOC, Opp'n to Mot. for Summ. J. at 8, but such "unsupported allegations," absent evidence from "affidavits, declarations, or other competent evidence, setting forth specific facts," are not sufficient, *Dreiband*, 319 F. Supp. 3d at 319. The alleged issues occurred more than five months after Plaintiff's pay-increase email, undercutting any inference of causation based on temporal proximity. *See* Pl.'s Exs. 8–14. Nor do Defendant's emails, on their face, suggest any retaliatory motive—Defendant was largely responsive, inspecting the premises and scheduling additional

---

resignation, she was refused the rodent-treatment assistance afforded to other tenants. *See* Woolcock Dep. 211:19–212:11 (explaining that the community manager "made it clear that . . . they will not be assisting me"); Def.'s SUMF ¶¶ 61–62. In any case, as explained below, the parties' difference in framing is immaterial because the claim independently fails for lack of causation.

maintenance.  Tellingly, at her deposition, Plaintiff attributed Defendant's refusal to address her alleged rodent infestation not to any complaint about her pay, but to the fact that Plaintiff had helped another employee after resigning.  *See* Woolcock Dep. 212:12–213:14.  Plaintiff's attempt to recast Defendant's handling of her habitability complaints as retaliation for her pay-increase email is unpersuasive, and no reasonable jury could find the email to be the but-for cause of the challenged inaction.

Summary judgment is therefore appropriate as to Plaintiff's Title VII and Equal Pay Act retaliation claims.

### IV.   CONCLUSION

For the reasons set forth above, the court will GRANT Defendant's motion for summary judgment, ECF No. 51.  A separate order will follow.

Date: July 14, 2026

*Tanya S. Chutkan*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
TANYA S. CHUTKAN
United States District Judge